Dana B. Salmonson
Nevada Bar No. 11180
dana.salmonson@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Wells Fargo Tower
Suite 1500
3800 Howard Hughes Parkway
Las Vegas, NV  89169
Telephone:  702.369.6800
Fax:  702.369.6888

*Attorney for Defendant*
*Portfolio Recovery Associates, LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| DELANIE BUTLER and JOHN ROBINSON, individually and on behalf of all similarly situated class and collective action members,<br><br>Plaintiffs,<br><br>vs.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC, a Delaware Limited Liability Company; DOES I through X, inclusive; ROE CORPORATIONS I through X inclusive,<br><br>Defendants. | Case No.:  2:20-cv-00861-JCM-EJY<br><br>**AMENDED JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Plaintiffs DELANIE BUTLER and JOHN ROBINSON ("Plaintiffs") and Defendant PORTFOLIO RECOVERY ASSOCIATES, LLC ("Defendant"), by and through undersigned counsel, submit this Amended Joint Motion for Preliminary Approval of Class Action Settlement. Plaintiffs and Defendant (collectively referred to as "the Parties") have agreed to settle Plaintiffs' Class and Collective Action lawsuit. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Parties seek this Court's preliminary approval of the Parties' "Joint Settlement and Release" ("Settlement"), a copy of which is concurrently submitted for this Court's review as **Ex. A-1** to the Declaration of Dana B. Salmonson, attached hereto as **Exhibit A**.

. . .

. . .

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV  89169
TELEPHONE: 702.369.6800

**I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Plaintiffs filed a Complaint against Defendant alleging Defendant violated the Worker Adjustment and Retraining Notification Act of 1988 ("WARN Act") and asserting wage and hour claims under the Federal Labor Standards Act ("FLSA") and Nevada state law.  (ECF No. 1.) Defendant moved to sever Plaintiffs' federal and state wage and hour claims brought on behalf of Defendant's hourly workers from the claim under the WARN Act.  (ECF No. 13.)  The Court transferred the wage and hour claims to the United States District Court for the Eastern District of Virginia.  (ECF No. 24.)  The only remaining claims allege WARN Act violations and wage and hour claims for salaried employees.

On April 8, 2021, the Parties mediated the claims in this action and reached a Settlement. The Parties then filed a Joint Notice of Settlement.  (ECF No. 46.)  The Parties represented to the Court they would file their Joint Motion for Preliminary Approval of Class Action Settlement by June 7, 2021; that deadline was extended to June 28, 2021.  (ECF No. 48.)  The Parties stipulated and requested a second extension of time, extending the deadline to July 12, 2021, which the Court granted.  (ECF No. 49 and ECF No. 50.)

On July 12, 2021, the Parties filed a Joint Motion for Preliminary Approval of Class Action Settlement.  (ECF No. 52.)  The Court issued an Order to Show Cause why the Joint Motion for Preliminary Approval of the Class Action Settlement should not be denied.  (ECF No. 53.)  The Parties provided a Response on October 13, 2021 (ECF No. 54) and the Court allowed the Parties until November 17, 2021 to fix the clerical errors in ECF No. 23 and ECF No. 24, and amend their Joint Motion for Preliminary Approval of Class Action Settlement.  (ECF No. 55.)

The parties now submit their Joint Amended Motion.  For purposes of the proposed Settlement, there are two classes, "Hourly Employees" and "Salaried Employees."  The Hourly Employee class is defined as:  Hourly employees of Defendant's Las Vegas Regional Office ("LVRO") who were employed by Defendant on March 23, 2020 and lost employment as a result of the LVRO closure.  The Salaried Employee class is defined as: Salaried Employees of Defendant's Las Vegas Regional Office who were employed by Defendant on March 23, 2020 and lost employment as a result of the LVRO closure.

. . .

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

2

## II.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

### A.    The Monetary Recovery

The Settlement provides for a maximum settlement amount of $160,000.00 (the "Global Settlement Fund"). **Ex. A-1**, Settlement at ¶ 11, 12. The following approximate breakdown applies to payments from the Global Settlement Fund:

- $89,750.83 for the Hourly Employee class for the WARN Act claims; and

- $14,249.17 for the Salaried Employee class for the WARN Act claims.[1]

- $6,000 in enhancement to Plaintiffs DELANIE BUTLER and JOHN ROBINSON for their participation in the lawsuit; and

- An amount not to exceed $50,000 in attorneys' fees and costs.

**Ex. A-1**, Settlement at ¶ 12. The Settlement Administrator fees shall be separately paid by Defendant, and shall not be paid from the Global Settlement Fund. *Id.*, ¶ 11. The Awards to Class Members shall be deemed to be income to such Class Members solely in the year in which such awards actually are received by the Class Members. *Id.* at ¶ 12(e). The Settlement Administrator will be responsible for issuing (a) all funds by way of negotiable instrument from the Global Settlement Fund, (b) W-2 Forms, and (c) W-9 forms (if required.). *Id.* at ¶ 12. Settlement awards for Class Members (defined at *id.at* ¶ 1(e)) will be paid out of the Global Settlement Fund accounting for the damages each member of the Settlement Class allegedly incurred proportionally based on his or her rate of pay on March 23, 2020. *Id.* at ¶ 12(d).

Class Members who want to participate in the Settlement *do not need to do anything. See e.g.,* Settlement at ¶ 16; Proposed Notice, attached hereto as **Ex. A-2**. If 7.5% or more of the Settlement Class revoke participation in, or opt out of, the Settlement, Defendant shall have the unilateral right to rescind the Parties' Settlement. Settlement, ¶ 13. If less than 7.5% of the Settlement class revoke participation in, or opt out of, the Settlement, the Settlement will proceed and is *a non-reversionary*, total payout Settlement. Any funds related to uncashed settlement checks (*i.e.*, after 180 days) will belong to Defendant.

---

[1] At the mediation, the parties came to an agreement that the Salaried Employees were not owed anything under NRS 608.0197 and NRS 608.020.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

**B.    The Release**

In consideration for the Settlement, members of the Settlement Class[2] who do not file valid requests for exclusion or objections to the Settlement will release all claims relating to, or arising from, the facts alleged in Plaintiffs' operative complaint and that reasonably arise, or could have arisen from, the facts alleged as to the Class Members—*i.e.*, "All persons who were employed by Defendant at Defendant's Las Vegas Regional Office ("LVRO") on March 23, 2020 and lost employment as a result of the LVRO closure." **Ex. A-1**, Settlement at ¶ 5.  Nothing in the Settlement releases any claims that cannot be released as a matter of law.

**C.    The Settlement Mechanism**

The Parties have agreed to use a third-party Claims Administrator to administer the settlement claims process. **Ex. A-1**, ¶ 13.  The Settlement provides for the Claims Administrator to send out a Notice explaining the terms and conditions of the Settlement to approximately 190 Class Members, 169 hourly employees and 21 salaried employees.  *Id.* ¶¶ 13, 16; *see also* **Ex. A-2**. Following mailing of the Notice, Class Members then have thirty (30) days to submit a claim form and participate in the Settlement, request to be excluded from the Settlement, or object to the Settlement.  *Id.* ¶¶ 16(a)(ii), 17.  (The Request for Exclusion form is attached hereto as **Ex. A-3**.) The Settlement further provides, after the notice period, the Court will hold a final "fairness" hearing to provide final review and approval of the Settlement.  *Id.* ¶ 16(a)(iv); **Ex. A-2**.  The Notice advises Class Members about the fairness hearing, as well as their opportunity to attend the hearing and make their views known.  *Id.*  At the fairness hearing, the Parties will address any issues raised by Class Members and the Court will have a second opportunity to review the settlement in full.

**III.    THE LEGAL FRAMEWORK WEIGHTS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT**

FRCP 23(e) provides that settlement of class action claims is subject to the court's approval. In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v.*

---

[2] "Settlement Class" means employees of Defendant's Las Vegas Regional Office ("LVRO") who were employed by Defendant on March 23, 2020 and lost employment as a result of the LVRO closure.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

*GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the final fairness hearing, and authorizes notice of the proposed settlement to be given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("Manual for Complex Litigation") (summarizing "preliminary fairness review"). Stage two is the fairness hearing, set for a time after notice has been provided to the Class and Class Members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it. The court then makes a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Id.* at 659 (citations omitted).

For the reasons set forth below, the Parties submit: (a) the Settlement Class should be certified; (b) the Settlement should be preliminarily approved as fair, reasonable, and adequate; and (c) class notice should be distributed as set forth in the Settlement.

### A.   The Settlement Class Should Be Certified.

To facilitate the proposed Settlement, Plaintiff respectfully asks the Court conditionally certify the following two Settlement Classes pursuant to FRCP 23:

(1) Hourly Employee class: Hourly employees of Defendant's Las Vegas Regional Office ("LVRO") who were employed by Defendant on March 23, 2020 and lost employment as a result of the LVRO closure.
(2) Salaried Employee class: Salaried employees of Defendant's Las Vegas Regional Office who were employed by Defendant on March 23, 2020 and lost employment as a result of the LVRO closure.

**Ex. A-1**, Settlement at ¶ 5. The Parties agree, for purposes of settlement, the criteria for certifying the Class under FRCP 23(a) and FRCP 23(b)(3) are satisfied in this case, and the proposed Class should be certified for purposes of settlement. *See* **Ex. A-1**, ¶ 5.

### 1.   All four criteria of FRCP 23(a) are met.

***FRCP 23(a)(1):  The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the Settlement Class includes approximately 193 individuals. Plainly, the numerosity criterion is satisfied.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.*** The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Here, the Hourly Employee class includes all hourly employees who were employed at Defendant's Las Vegas Regional Office ("LVRO") on March 23, 2020 and lost employment as a result of the LVRO closure. Under the WARN Act, employers are required "to provide adequate notice of future layoffs to all employees before ordering a mass layoff or plant closing." *Sides v. Macon Cnty. Greyhound Park Inc.*, 725 F.3d 1276, 1280 (11th Cir. 2013). The Act generally requires covered employers to give affected employees 60 days written notice of any plant closure (as occurred here) or mass layoff. 29 U.S.C. § 2102(a); *Alarcon*, 27 F.3d at 388. Based on these common issues, the Parties submit sufficient commonality exists.

The Salaried Employee class includes all salaried employees who were employed at Defendant's Las Vegas Regional Office ("LVRO") on March 23, 2020 and lost employment as a result of the LVRO closure. Under the WARN Act, employers are required "to provide adequate notice of future layoffs to all employees before ordering a mass layoff or plant closing." *Sides v. Macon Cnty. Greyhound Park Inc.*, 725 F.3d 1276, 1280 (11th Cir. 2013). The Act generally requires covered employers to give affected employees 60 days written notice of any plant closure (as occurred here) or mass layoff. 29 U.S.C. § 2102(a); *Alarcon*, 27 F.3d at 388. Based on these common issues, the Parties submit sufficient commonality exists.

***FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.*** Like commonality, the typicality standard is "permissive[ly]" applied." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied when the representatives' claims are "'reasonably coextensive with those of absent class members; they need

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

not be substantially identical.'" *Id.* Here, the named Plaintiffs are former employees of Defendant who had worked at Defendant's LVRO. Delanie Butler is representative of the Hourly Employee class because she was an hourly employee of LVRO at the time of closure. John Robinson is representative of the Salaried Employee class because he was a salaried employee of LVRO at the time of closure. Plaintiffs allege Defendant terminated the entire LVRO office via email notification in violation of the WARN Act. (ECF No. 1, ¶ 43.) Although Defendant does not admit the allegations in the Complaint, for purposes of approving this Settlement *only*, Defendant does not oppose Plaintiffs' assertion that sufficient typicality exists.

*FRCP 23(a)(4): The representative parties will fairly and adequately protect the interests of the class.* Courts have interpreted this requirement as posing two questions: (a) whether the named plaintiff or his counsel has any conflicts of interest with other class members, and (b) whether the named plaintiff and his counsel will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases). Here, the named Plaintiffs and their counsel do not have interests antagonistic to those of other Class Members. To the contrary, the named Plaintiffs share with absent Class Members the same interest in recovering damages as a result of the alleged violations of Defendant's WARN Act obligations. The proposed settlement was reached only after mediation and an arm's-length direct settlement discussion. **Ex. A**, ¶ 5. Thus, the named Plaintiffs and their counsel are adequate representatives of the Class.

### 2.    The criteria of FRCP 23(b)(3) are met.

To certify a class under FRCP 23(b)(3), a court must find (1) common questions of fact or law predominate over questions only affecting individual members of the proposed class, and (2) a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). Both criteria are met here.

*The predominance requirement is met*. The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

*Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

The predominance requirement is readily met because, as with numerous other class actions, Plaintiffs' claims are based on an allegation Defendant violated the WARN Act by not providing the required amount of Notice. Plaintiffs' claims are based on factual and legal questions about Defendant's actions that are common to the Class.  These aspects of the case strongly support a finding the predominance requirement is satisfied.  *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp. 2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).  Accordingly, for purposes of settlement approval, the Parties submit that common issues of law and fact predominate here, thus satisfying the standard of FRCP23(b)(3).

***The superiority requirement is met.***  Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims.  *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. at 614. When affirming the district court's approval of a class action settlement, the Ninth Circuit stated:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985).  In such a situation, the superiority requirement is "easily satisfied."  *Id.*  For purposes of settlement approval, the Parties submit Rule 23(b)(3)'s superiority requirement is met here.

### B.    The Proposed Settlement Is Fair, Reasonable, and Adequate.

The *Manual for Complex Litigation* § 21.62 identifies several factors courts may weigh when determining if a settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)), summarizing the inquiry as follows: "Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

of the settlement to those claims.  Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377,386 (C.D. Cal. 2007).  Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating.  *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing.  *Id.,* § 21.633 at 321.

### 1.    The Settlement Is Fair.

**Fairness of distribution among class members.**  The proposed settlement is fair to all members of the Settlement Classes. The basis for recovery is the same for all Hourly Employee class members.  Similarly, the basis for recovery is the same for all Salaried Employee class members. Class Member, as described above in the sections discussing the typicality and predominance requirements. (*See* pp. 7-9, above.)  All members of the Settlement Class are eligible to receive funds that are proportional based on the rate of pay for each member of the Settlement Class at the time the LVRO was closed. Finally, each member of the Settlement Class who does not elect to be excluded from the Settlement will be bound by the same release provision as all other class members.

**Fairness of proposed attorneys' fees.**  The allocation of total settlement funds between Class Members and the attorneys is also fair because the Settlement provides for Plaintiffs' counsel to seek no more than one-third of the Maximum Settlement Amount in fees.  The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis.  Furthermore, the fee request is in line with other attorneys' fees awards for

similar actions, particularly given that class members here will each be entitled to receive a substantial claim payment without separately alleging, or proving, any losses. Indeed, courts have recognized an appropriate method for awarding attorneys' fees in class action is to award a percentage of the "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Moreover, several courts have expressed frustration with the alternative "lodestar" approach to deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

Indeed, the percentage approach is preferable to the lodestar because it: (a) aligns the interests of class counsel and absent class members; (b) encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (c) reduces demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Courts now routinely use the percentage of the common fund approach when determining attorney fees awards. (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund)).

Class counsel's application for one-third of the Settlement Funds is within the range of reasonableness. Historically, courts have awarded percentage fees ranging between 20% and 50% of the common fund. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No

general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6. Accordingly, the attorneys' fees sought in this case are fair and reasonable.

**Fairness of proposed "enhancement" award for the named Plaintiffs**.  The principle of fairness is also well served by the $6,000 enhancement payment proposed for the named Plaintiffs. Plaintiffs provided invaluable assistance to their counsel by explaining the facts about Defendant's alleged WARN violations.  Furthermore, Plaintiffs incurred personal risk in bringing this lawsuit on behalf of the other persons in the class.  Such service payments are recognized as serving an important function when promoting class action settlements.  In *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court concluded the proposed settlement properly granted the named plaintiff additional relief, explaining it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024.  Accordingly, the enhancement is fair.

### 2.    The Settlement Is Reasonable.

Here, each individual Class Member who does not exclude himself or herself from the Settlement is guaranteed a portion of the Settlement Amount.  There is risk associated with continued litigation, including the fact that a class might not be certified or may be significantly smaller than proposed.  Of particular importance to determining the reasonableness of the proposed Settlement are the significant questions about whether Defendant was liable to Class Members for allegedly violating the WARN Act.  Given the legal and factual uncertainty as to WARN liability, the $160,000 settlement amount is a more-than-reasonable recovery based on the alleged violations.

Furthermore, while Class Counsel believe Plaintiffs' claims are meritorious, they are experienced class action litigators, and understand the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many more months or even years. Thus, an important factor considered when approving a settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625. The Court must weigh the

11

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

benefits of the proposed settlement against the expense and delay involved with achieving an equivalent, or more favorable, result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971).

The policy favoring settlement of class actions and other complex cases applies with particular force here.  Putative class actions amplify the economies of time, effort, and expense achieved by the Settlement.  Inevitably, the certification process alone would add time and expense to the litigation process.  The Settlement, on the other hand, provides Class Members substantial, prompt, and efficient relief.  The Settlement in this case is, therefore, consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits."  *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

### 3.    The Settlement Is Adequate.

The adequacy of a class action settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice,* 688 F.2d at 634 (citation omitted).  Accordingly, the Settlement is not to be judged against a speculative measure about what may have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998).  In addition, determining the adequacy of the settlement "involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Manual for Complex Litigation* § 21.62.  An additional consideration is that the settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir. 1974).

Judged under these standards, the Settlement is more than adequate.  First and foremost, the present value of the Settlement sum significantly exceeds what the members of the Settlement Class would have likely received in the absence of a class action settlement.  Not only is the maximum Settlement amount of $160,000 an excellent recovery for the 190 members of the Settlement Class, but it is even more advantageous to the Class when considering (a) the high probability of lengthy

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

litigation in the absence of a settlement, and (b) the risks the class might not have prevailed at the motion stage or at trial, or that its ultimate damages recovery could be less per person than what is being recovered under the Settlement.

For all of these reasons, the Parties respectfully urge this Court to grant preliminary approval of the Settlement.

### C.    The Notice and Claim Form Adequately Inform Class Members Of The Settlement and Their Rights Thereunder.

As previously indicated, a copy of the Parties' proposed class notice is attached as **Ex. A-2**. Among other things, the Notice explains:  the claims in the case and the essential terms of the settlement; Class Members need to do nothing to be part of the Settlement; the procedures for a request to be excluded from the Settlement, and or objecting to the Settlement; and the consequences of each option available to the Class Member (doing nothing, opting out, or objecting).  The Notice advises class members about the fairness hearing, their rights with respect to that hearing, and how to get more information about the Settlement.

Additionally, a copy of the Parties' proposed Request for Exclusion form are attached as **Ex. A-3**.  The form is simple and straightforward.  The time period for submitting a Request for Exclusion is reasonable, allowing Class Members time to digest the information in the Notice and obtain answers to questions before deciding about their course of action.

Accordingly, the Parties respectfully ask the Court to approve the form of the proposed Class Notice and claim form, and the Court authorize the sending of the Notice and claim form to the members of the Settlement Class.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
WELLS FARGO TOWER
SUITE 1500, 3800 HOWARD HUGHES PARKWAY
LAS VEGAS, NV 89169
TELEPHONE: 702.369.6800

13

**IV.    CONCLUSION**

For the reasons set forth above, the Parties respectfully requests that the Court enter the proposed order granting preliminary approval of the class action settlement that is attached hereto as **Ex. A-4**.

DATED this 1st day of December, 2021.          DATED this 1st day of December, 2021.

HUTCHINGS LAW GROUP, LLC          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/ *Mark H. Hutchings*          /s/ *Dana B. Salmonson*
Mark H. Hutchings, Esq.          Dana B. Salmonson
Nevada Bar No. 12783          Nevada Bar No. 11180
300 S. 4th Street, Suite 1400          Wells Fargo Tower
Las Vegas, NV  89101          Suite 1500
*Attorney for Plaintiffs*          3800 Howard Hughes Parkway
                                              Las Vegas, NV  89169
                                              *Attorney for Defendant*

14